UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CEDRIC OLIVER,

      Petitioner,

v.                                                    CASE NO. 6:09-cv-607-Orl-36DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 8). Petitioner filed a reply to the response (Doc. No. 14).

Petitioner alleges six claims for relief in his habeas petition: (1) trial counsel was ineffective for failing to investigate or object to the error in his arrest warrant; (2) trial counsel was ineffective for failing to object to, and preserve for review, the trial court's failure to conduct an evidentiary hearing to determine whether restraints were necessary at trial; (3) trial counsel was ineffective for failing to file a motion to sever the charges; (4) trial counsel was ineffective for failing to preserve for review the issue that the information

was invalid and divested the trial court of jurisdiction; (5) trial counsel was ineffective for failing to object to, raise, or argue the issue that his trial was fundamentally unfair because a State witness was allowed to vouch for and bolster the credibility of another witness; and (6) trial counsel was ineffective for failing to object to and preserve for review the issue of the State's prosecutorial misconduct during opening and closing statements.

## I.      *Procedural History*

Petitioner was charged with eight counts of capital sexual battery and one count of lewd or lascivious molestation for offenses committed on his girl friend's three daughters. At trial, victim H.S., eleven years old and in fifth grade at the time of trial, testified that Petitioner lived with her family for several years, beginning when she was in first grade (App. B at 92-94). H.S. stated that everyone got along with Petitioner except for her sister, M.G., who frequently argued with Petitioner. *Id.* at 95. H.S. described several incidents in which Petitioner touched her in a sexually inappropriate manner. *Id.* at 96. The first time Petitioner touched her, her mother was at work and Petitioner sent her sisters outside and told H.S. to go into her mother's room. *Id.* H.S. testified that Petitioner instructed her to remove her clothing, get on the bed, and Petitioner blindfolded her and put his penis inside her vagina. *Id.* at 98-99.

H.S. also testified that when she was in second grade, she was in her mother's room with Petitioner, and he put his penis inside her mouth. *Id.* at 101. H.S. told the court that Petitioner put his penis "on" her butt on a separate occasion. *Id.* at 102. On cross-examination, H.S. testified to another occasion where she was sleeping in the living room

on the pull-out couch and Petitioner woke her up, told her to take off her clothes, and put his penis in her vagina. *Id.* at 115-19. H.S. never told her mother about these incidents because she was afraid, despite the fact that Petitioner never threatened her or told her he was going to hurt her. *Id.* Furthermore, H.S. admitted that after her sister M.G. had accused Petitioner of inappropriate behavior, she lied to her mother and stated that nothing had happened. *Id.* at 104-05. After her mother broke up with Petitioner, she told her mother the truth because she knew "they were safe" and Petitioner would no longer be allowed near her and her sisters. *Id.* at 105-06.

Victim P.S., eight years old at the time of trial, testified that she could not remember how old she was when Petitioner first moved into their house. *Id.* at 134. P.S. testified regarding one incident of inappropriate touching but she could not remember how old she was or when it happened. *Id.* at 136-38-40. P.S. also recounted a time that Petitioner rubbed baby oil on her. *Id.* at 141. P.S. testified that one time she looked under the door of her mother's room and saw H.S. sitting naked on the bed, but P.S. did not see anyone else in the room. *Id.* at 142. P.S. did not tell her mother because she was scared and thought her mother would be mad. *Id.* at 143. On cross-examination P.S. admitted that after Petitioner moved out of their house, she drew him pictures and told him she loved him. *Id.* at 159.

Victim M.G., who was twelve at the time of trial and in seventh grade, testified that she did not always get along with Petitioner. *Id.* at 163. M.G. told the jury that Petitioner touched her inappropriately for the first time when she was in third grade. *Id.* at 164.

M.G.'s sisters were outside playing and her mother was at work when Petitioner told her to take off her pants and then touched her vagina. *Id.* at 165-66. M.G. testified that on another occasion, Petitioner touched her butt at night while her sisters were sleeping. *Id.* at 167-69. On a third occasion Petitioner rubbed her vagina with baby oil. *Id.* at 170. M.G. also testified that Petitioner once rubbed his penis against her vagina while her eyes were covered with a bandana. *Id.* at 171-72. M.G. told the jury about a fifth incident, in which Petitioner used his tongue on her vagina. *Id.* at 174. M.G. also stated that she once observed her sister, H.S., standing naked in her mother's room. *Id.* at 173.

M.G. testified that she did not tell her mother about Petitioner's inappropriate touching because she did not want him to hurt her mother. *Id.* at 175. M.G. stated that she did try to tell her mother once, but her sisters denied the allegations, therefore, the issue was dropped. *Id.* Nurse Deborah Scott, a part of the child protection team, testified that she performed examinations on H.S., P.S., and M.G. *Id.* at 210-11, 220. Scott did not observe any injuries, traumas, or scars on the victims. *Id.* at 228, 234-35. Scott also testified that it was not unusual to see no signs of trauma on a child, and the absence of trauma does not confirm or discredit the victims' allegations. *Id.* at 228, 236.

The victims' mother, Nicole Serna, testified that Petitioner moved into her house in March 1998 and her relationship with him ended in August 2003. *Id.* at 265. They had a tumultuous relationship, and Petitioner would sometimes leave the house and then move back in. *Id.* Serna testified that the family dynamics were better when Petitioner was not there. *Id.* at 266. In July 2002, her daughter, M.G., recounted an incident of inappropriate

4

touching that occurred between her and Petitioner. *Id.* at 267. Serna did not believe her daughter's allegations. *Id.* Serna never observed any unusual or suspicious behavior. *Id.* at 268.

Serna testified that M.G. again made the same accusations against Petitioner after he moved out of their home, and this time her sisters corroborated her story. *Id.* at 269. Serna admitted that Petitioner was very controlling, in that he would never let her use the car, and when she would ask him to leave, he would break into her house. *Id.* at 314-15. Petitioner testified that his relationship with Serna's daughters was good, although he stated that M.G. was "very aggressive, disrespectful" so he had to "handle her a little different than the other girls." *Id.* at 322. Petitioner denied the victims' allegations. *Id.* at 323.

Petitioner admitted that he had been convicted of six or seven felonies. *Id.* at 324. Petitioner also testified that he was not controlling. *Id.* at 325. Petitioner stated that the other girls were scared of M.G. *Id.* Petitioner testified that he believed M.G. and Serna were "putting the girls up to what they are saying." *Id.* Petitioner admitted that he had been convicted of armed robbery, battery on a law enforcement officer, and delivery and possession of cocaine, but stated that he had never been convicted of any sex crimes. *Id.* at 331.

During the jury trial, the state court granted defense counsel's motion for judgment of acquittal on four of the sexual battery counts (counts two, five, seven, and eight). The jury convicted Petitioner as charged of three counts of capital sexual battery (counts one,

5

four, and six) and of lewd or lascivious molestation (count nine). The state court declared a mistrial with respect to count three, and the State entered a nolle prosequi. The state trial court sentenced Petitioner to concurrent terms of life imprisonment for the capital sexual battery counts and to a thirty-year term of imprisonment for the lewd and lascivious count. The court ordered the sentence for count nine to run consecutively to the other sentences. Petitioner appealed, raising one ground for relief in his initial brief. The Fifth District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences.

Petitioner filed a Rule 3.800(a) motion to correct illegal sentence pursuant to the Florida Rules of Criminal Procedure, arguing that the trial court improperly sentenced him to consecutive terms of imprisonment. The state trial court denied relief. There is no indication that Petitioner appealed this denial. While his Rule 3.800(a) motion was pending, Petitioner filed a Rule 3.850 motion for post-conviction relief, alleging six grounds for relief. The state trial court summarily denied claims one, two, four, five, and six, and ordered an evidentiary hearing on claim three. After holding a hearing, the state court denied claim three. Petitioner appealed the denial of all six grounds. The Fifth District Court of Appeal *per curiam* affirmed. The instant federal habeas corpus petition follows.

## II.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an

6

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts."  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

7

where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

> **B.**     ***Standard for Ineffective Assistance of Counsel***

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  *Newland*, 527 F.3d at 1184.  In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]   *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009).  A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (April 4, 2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct.  1411, 1420 (2009)(citing *Yarborough v.  Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.*  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

## III.   *Analysis*

### A.    *Claim One*

Petitioner claims trial counsel rendered ineffective assistance by failing to investigate

and preserve for review an error committed by the State and trial court (Doc. No. 1 at 4-5). Petitioner specifically asserts that he was arrested without probable cause. *Id.* Petitioner contends that the affidavit supporting the arrest warrant was fatally defective because it was based upon unverified child hearsay obtained from the alleged victims. *Id.* at 5.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. G). The state court summarily denied the claim, finding the police officer who obtained the arrest warrant had reasonable grounds of suspicion to believe Petitioner had committed the crimes. *Id.* at 128. Moreover, the court noted that the fact that the belief was based upon hearsay did not render the arrest warrant insufficient. *Id.* The court concluded that the arrest warrant did not lack probable cause and thus, trial counsel had no basis to object to the arrest warrant and its supporting affidavit. *Id.* On appeal, the Fifth District Court of Appeal *per curiam* affirmed the lower court's denial (App. J).

Petitioner has not demonstrated that he is entitled to relief on this claim. An accused can be arrested so long as a judge determines there is probable cause in a nonadversary proceeding in which he or she may consider hearsay and written testimony. *Baker v. McCollan*, 443 U.S. 137, 143 n.2 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975) (noting confrontation and cross-examination are not constitutionally required in pre-arrest and post-arrest probable cause hearings)). Florida courts have also stated that probable cause sufficient to support an arrest warrant "may be met by hearsay, by fleeting observations, or by tips received from unnamed reliable informants . . . ." *Johnson v. State*, 660 So. 2d 648, 654 (Fla. 1995) (citing *Franks v. Delaware*, 438 U.S. 154, 167 (1978)).

10

The arrest warrant in this case was supported by an affidavit based on hearsay statements made by the victims.  The state court did not improperly issue the warrant because hearsay is sufficient to establish probable cause for an arrest.  Petitioner has not demonstrated that the arrest warrant lacked sufficient probable cause.  Consequently, trial counsel did not act deficiently by failing to object to the arrest warrant.  Furthermore, counsel's alleged deficiency did not result in prejudice because the arrest warrant was not rendered fatally defective.  Petitioner has failed to meet his burden of proving that the state court's determination of this claim was contrary to, or an objectively unreasonable application of *Strickland*.  Accordingly, claim one is denied pursuant to § 2254(d).

### B.    Claim Two

Petitioner alleges that trial counsel was ineffective for failing to object to, and preserve for appellate review, the trial court's failure to conduct an evidentiary hearing on whether his restraints were necessary at trial (Doc. No. 1 at 6).  Petitioner contends that the trial court violated his constitutional rights when it required him to wear leg shackles and a waist restraint in front of the jury without first holding a hearing to determine whether restraints were needed.  *Id.*  Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. G).  The state trial court summarily denied the claim pursuant to *Strickland*.  *Id.*  On appeal, the Fifth District Court of Appeal affirmed *per curiam* (App. J).

"The principle difficulty arising from shackling or handcuffing at trial is that it tends to negate the presumption of innocence by portraying the defendant as a bad or dangerous person."  *Gates v. Zant*, 863 F.2d 1492, 1501 (11th Cir. 1989).  The United States Supreme

Court has described shackling as an "inherently prejudicial practice." *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986).  When shackling is employed, there must be "close judicial scrutiny," *Estelle v. Williams*, 425 U.S. 501, 503-04 (1976), to ascertain if an "essential state interest" was furthered by requiring the defendant to wear shackles and whether less restrictive, less prejudicial methods of restraint were considered or could have been utilized. *Holbrook*, 475 U.S. at 579.  However, if the claim relates to counsel's performance with respect to the issue of the use of shackles, the petitioner "still must show a reasonable probability that, absent his being shackled" the jury would not have found the petitioner guilty. *Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1314 (11th Cir. 2005) (requiring a finding of prejudice in a capital case when considering counsel's performance in relation to the petitioner being required to wear shackles during the penalty phase).

The record reflects that prior to the commencement of voir dire before Judge Dauksch,[2] defense counsel filed a motion in limine asking the court to remove Petitioner's shackles during trial (App. B at 2).   The following exchange occurred outside of the presence of the potential jury members:

The Court:  What's your background? Have you ever escaped?

The Defendant:  No, sir.

The Court:  Do you plan on escaping this time?

The Defendant:  No, sir.

_____

[2]Judge Dauksch only presided over jury selection.  Judge Waller presided over the remainder of the trial.

Mr. Waggoner [defense counsel]:  Mostly drug charges, Judge, is what he's had in the past.

The Court:  What says the state?

Ms. DeYoung [state prosecutor]:  I'm pulling up his history right now.

The Court:  What says the sheriff?

Court Deputy:  It's up to you, Judge.

. . .

Ms. DeYoung:  Your Honor, he has a prior conviction as a principal in a first degree armed robbery.  He also has a prior conviction on battery on a law enforcement officer.

The Court:  Yeah.  I think we'll leave those on for now.  We'll protect his position. What we'll do we'll situate you and seat you the way you are now and nobody can see - -

The Defendant:  No, sir.

The Court:  And then when it comes time for the jury to see you, we'll have you back around there so they can't see your legs.  And then if you come up to testify, we'll make accommodation [sic] then too.

*Id.* at 2-4.  The following day, another exchange regarding Petitioner's shackles occurred before

Judge Waller:

The Court:  All right.  For the record, this is Cedric Oliver, 03-2995, Don Waggoner and Lorraine DeYoung.  Mr. Oliver is in street clothes and has no restraints.

Court Deputy: He has changed -- they had him on over there in front of everybody with them on.

The Court: He has what?

Court Deputy:  He has his shackles.

The Court: I didn't hear them.

13

Mr. Waggoner: He's got them on.  Judge Dauksch will never take the shackles off.

The Court: Well, I want them off.

Court Deputy Norrid: I just wanted to make you aware they've already seen it.

Court Deputy Hyder: For his criminal history, Judge.

The Court: I want the shackles off.

Mr. Waggoner: Yeah.  He's not gonna run.

Court Deputy Norrid:  I was just trying to make you aware they've already seen them so . . .

The Court: Who saw them?

Court Deputy Norrid:  They're aware he's in custody.

*Id.* at 72-73.

Petitioner contends that after the initial trial judge denied defense counsel's motion to remove his restraints, counsel should have objected and requested a hearing on the issue.  However, Petitioner fails to note that although he was shackled during voir dire, his restraints were removed the following day.  Petitioner remained restraint-free for the remainder of the trial.  Additionally, while it is unclear whether members of the jury briefly saw Petitioner wearing his restraints, the Eleventh Circuit has stated that "[t]he well established rule in this circuit is that 'a brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant.'" *Allen v. Montgomery*, 728 F.2d 1409, 1414 (11th Cir. 1984) (quoting *Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976)).

14

Petitioner has not met his burden of proving prejudice in this case, in that he cannot show that absent being shackled, the jury would not have found him guilty. *Allen*, 728 F.2d at 1414. The jury heard the testimony of the three victims, who described multiple incidents of sexual battery and lewd and lascivious acts. Moreover, Petitioner testified on his own behalf and told the jury that he did not commit the crimes. Petitioner also testified that he had previously been convicted of six or seven felonies. Thus, this Court concludes there is not a reasonable probability that absent the jury's brief, fortuitous encounter with Petitioner in shackles, that they would not have convicted him of sexual battery and lewd and lascivious molestation. Petitioner has not demonstrated that trial counsel acted deficiently in this case. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### C.    Claim Three

In his third claim, Petitioner alleges that trial counsel rendered ineffective assistance by failing to file a motion to sever the charges as to each victim (Doc. No. 1 at 7). Petitioner contends that the charges involved three separate victims, the charged acts took place at different times, and each victim did not observe the acts that were committed upon the other victims, therefore the charges should have been severed and tried separately. *Id.* at 7-8.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. G). The trial court held an evidentiary hearing on this claim. Petitioner testified that he

asked counsel if they could have separate trials for each of the victims and defense counsel told him that there was no need for separate trials because the State did not have a lot of evidence against him. *Id.* at 190-91.  Defense counsel Waggoner did not remember having a specific conversation with Petitioner regarding a motion to sever the charges; however, he testified that he never seriously considered severing the charges. *Id.* at 195-96.  On cross-examination, Waggoner stated that he would not have considered filing a motion to sever the charges because he believed that the victims' allegations would be admissible in the separate trials as *Williams* rule evidence.  *Id.* at 198-200, 203.   Furthermore, Waggoner testified that he thought Petitioner had a better chance of being acquitted of most of the charges if they were all tried together rather than in separate cases.  *Id.* at 200.  Waggoner stated that essentially he made a tactical decision not to sever the charges.  *Id.*

The state trial court denied the claim. *Id.* at 174-78.  The trial court found Petitioner's testimony at the evidentiary hearing was not credible and concluded that defense counsel's decision not to seek a severance was made without objection by Petitioner. *Id.* at 175.  The court also determined that counsel's decision not to seek severance of the counts was made without Petitioner's informed consent.  *Id.*  However, the court concluded that even if counsel acted deficiently, there was no reasonable probability that the outcome of the trial would have been different had the charges been severed due to the fact that much of the testimony would be admissible at each separate trial as similar fact evidence.  *Id.* at 176-78.  The Fifth District Court of Appeal *per curiam* affirmed the lower court's denial of this claim (App. J).

Florida Rule of Criminal Procedure 3.152(a)(1) states that "[i]n case 2 or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges on timely motion."  Similarly, Rule 3.150(a) states that "[t]wo or more offenses that are triable in the same court may be charged in the same . . . information . . . when the offenses . . . are based on the same act or transaction  or on 2 or more connected acts or transactions." Fla. R. Crim. P. 3.150(a).  "The 'connected acts or transactions' requirement set forth in rule 3.150(a) requires that the charges joined for trial must be considered in an episodic sense." *Shermer v. State*, 935 So. 2d 74, 76 (Fla. 4th DCA 2006) (quoting *Garcia v. State*, 568 So. 2d 896, 899 (Fla. 1990)).  Additionally, there must be a "meaningful relationship between or among the charges before they may be tried together." *Id.* (quotation omitted).  Therefore, the crimes must be linked in a significant way, in that they must have occurred during a "crime spree" or in a situation "where one crime is causally related to the other."  *Id.*

In the instant case Petitioner was charged with eight counts of capital sexual battery. Three of those counts were alleged to have been committed against victim P.S., three of the counts were alleged to have been committed against victim H.S., and the State alleged two counts were committed against victim M.G. (App. A at 14-22).  The final count, lewd and lascivious molestation, was alleged to have been committed against victim M.G.  *Id.* at 22. P.S., H.S., and M.G. were sisters, and lived in the same house with their two other sisters, mother, and Petitioner when the offenses were committed.  Aside from the fact that the victims were sisters and the State alleged that the crimes were committed during the same

time period, between July 8, 2000, and November 30, 2002, the charges against each victim were not connected in any meaningful way. Thus, counsel likely was deficient for failing to file a motion to sever, as such a motion would have been granted pursuant to Rule 3.152.

Nevertheless, although counsel testified that while he could not remember discussing the issue with Petitioner, counsel stated he would not have moved to sever the charges because much of the evidence would be admissible in each separate trial. The United States Supreme Court has noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Moreover, the Court stated that "strategic choices made after less than complete investigation are reasonable . . . to the extent . . . professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* Counsel's decision to forego filing a motion to sever the charges was a matter of trial strategy. Moreover, even if counsel's failure to file a motion to sever did not amount to trial strategy, Petitioner cannot demonstrate that the failure to sever the charges prejudiced the outcome of his trial.

This Court agrees with the state court that testimony regarding the sexual abuse that occurred to all three victims would have been admissible at each separate trial. In *Williams v. State*, 110 So. 2d 654 (Fla. 1959), the Florida Supreme Court held that evidence of the commission of another or separate crime is admissible if relevant to prove anything other than the bad character of the defendant or his propensity to commit the charged crime. The

rule was codified at section 90.404(2) of the Florida Statutes.[3]  Section 90.404(2)(b)1. allows

similar fact evidence in child molestation cases and provides "[i]n a criminal case in which

the defendant is charged with a crime involving child molestation, evidence of the

defendant's commission of other crimes, wrongs, or acts of child molestation is admissible,

and may be considered for its bearing on any matter to which it is relevant."  Nonetheless,

Florida courts have held that even relevant evidence "is inadmissible if its probative value

is substantially outweighed by the danger of unfair prejudice." *LaValley v. State*, 30 So. 3d

513, 515-16 (Fla. 5th DCA 2009) (citing *McLean v. State*, 934 So. 2d 1248 (Fla. 2006)).   In

determining whether to admit evidence of previous molestations by a criminal defendant,

courts must consider (1) the similarity of the prior acts to the act charged regarding location

of where the acts occurred, the age and gender of the victims, and the manner in which the

acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the

frequency of the prior acts; and (4) the presence or lack of intervening circumstances.

*McLean*, 934 So. 2d at 1262.

In *LaValley*, the Fifth District Court of Appeal found that evidence of a collateral

crime, namely a sexual molestation of the defendant's daughter when she  was under the

age of eighteen years old, was properly admitted at the defendant's trial on three counts

of sexual battery.  30 So. 3d at 516.  The defendant was charged with three counts of sexual

---

[3] Section 90.404(2)(a), Florida Statutes, states "[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

battery on a child between twelve and eighteen years old by a person in familial or custodial authority for offenses committed against his adopted daughter. *Id.* at 514. The court stated that both victims were female, both were approximately the same age when the molestations occurred (between twelve and fifteen years old), the molestations occurred within the familial context (inside the family home), and were a function of opportunity. *Id.* at 516. The appellate court concluded that the collateral testimony was proven by clear and convincing evidence and its probative value was not outweighed by the danger of unfair prejudice, thus the trial court did not abuse its discretion in admitting the testimony. *Id.*; *see also Oyarvid v. State*, 38 So. 2d 854, 855 (Fla. 1st DCA 2010) (concluding the trial court did not err in admitting evidence of collateral acts of child molestation in trial for lewd and lascivious molestation because the acts were "strikingly similar" and did not become a feature of the trial).

Similar to *LaValley*, evidence of the acts committed against the victims would have been admissible in each separate trial because the acts were all similar: eight counts of sexual battery committed in a similar manner and one count of lewd and lascivious molestation. Each victim testified that Petitioner would send the other children outside to play and would take the victim into their mother's room. Also, some of the incidents occurred at night when everyone else in the household was sleeping. Moreover, the victims all were female, were sisters, and were under the age of twelve when the acts were committed. The acts all were committed within the same two-year range and were in a familial context inside the family home. Finally, there is no indication that there were other

intervening circumstances.  The Court concludes that pursuant to section 90.404(2)(b)1,

similar fact evidence of Petitioner's acts of child molestation would have been admitted at

each separate trial, therefore there is no indication that counsel's actions in failing to move

to sever the charges resulted in prejudice.  Petitioner has not shown that the admissibility

of the evidence would be outweighed by the danger of unfair prejudice.

Petitioner has not met his burden of proving that the state court's determination of

this claim was contrary to, or resulted in an unreasonable application of, clearly established

federal law, or resulted in an unreasonable determination of the facts in light of the

evidence presented.  Claim three is denied.

### D.    Claim Four

Petitioner claims that trial counsel was ineffective for failing to preserve for

appellate review the issue that the information was invalid and divested the trial court of

jurisdiction (Doc. No. 1 at 9).  Petitioner contends that the information was not based on

sworn testimony made by material witnesses pursuant to Florida Rule of Criminal

Procedure 3.140(g).  *Id.*  Petitioner raised the instant claim in his Rule 3.850 motion for post-

conviction relief (App. G).  The state court summarily denied the claim, finding Petitioner

failed to demonstrate prejudice pursuant to *Strickland.  Id.* at 138-39.  The Fifth District

Court of Appeal *per curiam* affirmed the lower court's denial of this claim (App. J).

Florida Rule of Criminal Procedure 3.140(g) provides the following:

> An information charging the commission of a felony shall be signed by the
> state attorney, or a designated assistant state attorney, under oath stating his
> or her good faith in instituting the prosecution and certifying that he or she
> has received testimony under oath from the material witness or witnesses for

the offense . . . No objection to an information on the ground that it was not signed or verified, as herein provided, shall be entertained after the defendant pleads to the merits.

*See also State v. Weinberg*, 780 So. 2d 214, 215-16 (Fla. 5th DCA 2001) (affirming the dismissal of the information where the information was based upon the sworn testimony of the law enforcement officer who investigated the case and not a material witness). Petitioner argues that the information is invalid because the only material witnesses to the offenses were the child victims and they did not provide the state prosecutor with sworn testimony to support the information. Petitioner contends that instead, the information was based upon sworn affidavits provided by an investigating officer, the children's mother, and an assistant principal of the children's school.

Even if Petitioner's argument is correct, and the State improperly based the information on sworn statements made by the victim's mother, the investigating officer, and a school official and not on the sworn testimony of the victims in this case, Petitioner is not entitled to relief. Had counsel objected to the information, the State would have been entitled to re-file the information with proper sworn statements from the victims because the defect was one of form and not one of substance. *See Hedglin v. State*, 892 So. 2d 1183, 1184 (Fla. 5th DCA 2005) (citing *Alba v. State*, 541 So. 2d 747, 748 (Fla. 3d DCA 1989) (holding that while a criminal defendant was entitled to dismissal of the information because it was unsworn, the defendant was not entitled to release from the charges because the defect is only one of form and not of substance)).

The state court was not without jurisdiction to prosecute Petitioner, because "[n]o

indictment or information . . . shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information . . . unless the court shall be of the opinion that the indictment or information is so vague . . . as to mislead the accused." Fla. R. Crim. P. 3.140(o). Although the information suffered a defect as to its form, Petitioner was not misled by the charges, nor was he unable to prepare a defense because the information was rendered vague or indistinct. Furthermore, Petitioner received a jury trial where the victims testified under oath as to the allegations that form the basis of the information and Petitioner had the opportunity to cross-examine the victims.

Petitioner has not demonstrated that counsel's actions prejudiced the outcome of the case. The state court's determination of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Accordingly, this claim is denied pursuant to § 2254(d).

E. *Claim Five*

In his fifth claim for relief, Petitioner alleges that trial counsel was ineffective for failing to object, raise, or argue that his trial was fundamentally unfair when a State witness, Deborah Scott ("Scott") was allowed to vouch for and bolster the credibility of the victims (Doc. No. 1 at 10). Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. G). The state court summarily denied relief, finding that the witness's testimony did not bolster the credibility of the victims. *Id.* at 141. The court stated that "[a]lthough the witness opined that the children's histories did not necessarily

negate the medical findings, she also testified that they weren't necessarily support[ed] by them." *Id.* The court concluded that there was no improper vouching for the victims and denied the claim pursuant to *Strickland. Id.* The Fifth District Court of Appeal *per curiam* affirmed (App. J).

The record refutes Petitioner's claim. At trial, Scott, a child protection team nurse, testified that she performed physical examinations on all three victims (App. B at 211, 220). None of the victims showed signs of any trauma or scars in their genital regions. *Id.* at 228, 234-35. However, Scott also testified that the lack of signs of trauma on the children was not unusual because the types of actions described by the victims were less forceful contact that would not necessarily produce scarring or trauma. *Id.* at 228-229. Moreover, Scott noted that something could enter the vagina of one of the children up to a certain point without causing any damage. *Id.* at 229. Additionally, Scott testified that the anal sphincter is compliant and regularly dilates and constricts, therefore one would not see any damage unless subjected to a violent force. *Id.* at 230. Scott concluded by stating that the medical examinations of the victims do not confirm or discredit their allegations. *Id.* at 236.

This Court agrees with the state court that there is no evidence that witness Scott improperly vouched for the victims' credibility. Petitioner has not shown that trial counsel acted deficiently in failing to object to Scott's testimony nor has he demonstrated that counsel's failure to object prejudiced the outcome of the trial. Witness Scott told the jury that the medical findings did not support or discredit the victims' allegations. Thus, the jury had to judge the credibility of the victims and Petitioner in this case. Petitioner has not

met his burden of establishing that the state court's determination was contrary to, or an objectively unreasonable application of, federal law, nor has he shown that the court's determination resulted in an unreasonable determination of the facts in light of the evidence presented.  Accordingly, claim five is denied pursuant to § 2254(d).

### F.   *Claim Six*

Petitioner claims that trial counsel rendered ineffective assistance by failing to object and preserve for appellate review the State's prosecutorial misconduct during opening and closing statements (Doc. No. 1 at 11-12).  Petitioner contends that the State prosecutor testified about facts not in evidence during her opening statements and put his relationship with Nicole Serna on trial.  *Id.* at 12.  Moreover, Petitioner argues that during closing arguments, the prosecutor improperly vouched for the credibility of the State's key witnesses and improperly gave her opinion as to his guilt.  *Id.*  Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. G).  The state court summarily denied the claim, finding Petitioner failed to demonstrate prejudice pursuant to *Strickland*. *Id.* at 143.  The Fifth District Court of Appeal *per curiam* affirmed (App. J).

Claims based on the statements of a prosecutor are assessed using a two-prong analysis: first, the court must determine whether the comments at issue were proper, and, second, whether any comment found to be improper was so prejudicial as to render the entire trial fundamentally unfair.  *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987).  A trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different . . . [A]

25

reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations and quotations omitted); *see also Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985).

In arguing that the prosecutor improperly commented on facts not in evidence during the opening statement and also put Petitioner's relationship with Nicole Serna at issue, Petitioner points to the following comments made by the prosecutor:

> And when they [the victims] take the stand, what they're going to tell you is that Cedric Oliver and their mother, Nicole Serna, had a relationship that spanned several years.  I believe that on and off they lived as a family since 1998.  And there were times during those years that Mr. Oliver would be with the family, he'd leave the family, be with the family, leave the family.

> And you will hear from Nicole Serna, their mother, that when the times -- it came to a point where the times that Mr. Oliver would leave the family, times would be better for them.  She would get promoted, she'd get caught up on her bills, and things would be good and she would think, you know, I don't need him in my life.  But then he would come back and she'd take him in.  And then things would get worse.  And it would just keep cycling over and over and over again, until finally she, Nicole Serna, made the decision, you know, I need this man out of my life, I don't need him anymore.

> She sits down her girls, she tells them that Mr. Oliver is gone for good.  When she tells them that, [M.S.], one of her daughters, comes forward and says well, Mom,  now that he's gone, let me tell you what's been happening.  And she tells her mom about sexual abuse that she and her sisters has [sic] been suffering for about the past two years with Mr. Oliver.

(App. B at 86-87).

These statements do not amount to improper argument of facts not in evidence because they were opening statements and no evidence had been presented to the jury at that point.  Moreover, the state court advised the jury that "the opening statement gives the attorneys a chance to tell you what evidence they believe will be presented during the trial.

What the lawyers say is not evidence, and you are not to consider it such." *Id.* at 83. Additionally, Nicole Serna later testified that Petitioner moved in to her home in March 1998 and repeatedly left and came back. *Id.* at 264-65. Moreover, Serna testified that when Petitioner left, the family dynamic was better, the finances were better, and her attitude was better. *Id.* at 266. Serna told the jury that after her relationship with Petitioner ended in 2003, her daughter M.S. told her that Petitioner had been sexually molesting her. *Id.* at 269. M.S. had told her the same story previously, but Serna did not believe her daughter, however, this time M.S.'s sisters corroborated her story. *Id.* at 267-69.

Petitioner has not demonstrated that the comments at issue were improper nor has he shown that they were so prejudicial as to render the trial fundamentally unfair. Although the prosecutor's opening statements were not evidence, the prosecutor later supported his opening statements with testimony from Nicole Serna. Therefore, there is no indication that trial counsel acted deficiently in failing to object to the prosecutor's comments. The state court's determination of this portion of claim six was not contrary to, nor was it an unreasonable application of, *Strickland*.

Petitioner also points to several allegedly improper comments made during the State's closing arguments. Petitioner states that the prosecutor improperly vouched for or bolstered the victims' testimony and improperly opined that Petitioner was guilty. During closing arguments, the State argued that the victims' testimony was "much more credible than Mr. Oliver's" testimony (App. B at 383). Moreover, the prosecutor argued that the victims did not have a motive to lie, whereas Petitioner did have such motivation. *Id.* at

383-85.  The State also noted to the jury that the victims' allegations were not contradicted by the physical evidence.  *Id.* at 386.

"Attempts to bolster a witness by vouching for his credibility are normally improper and constitute error."  *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) (citations omitted).  Courts have found it improper for the "prosecution to place the prestige of the Government behind a witness by making explicit personal assurances of the witness' veracity."  *Id.* (citations omitted).  The Eleventh Circuit has stated that "[w]e denounce lawyers who give their personal opinion that 'I believe the witness is telling the truth.'"  *Id.* (quoting *United States v. Young*, 470 U.S. 1 (1985)).  However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."  *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).

In this case, the prosecutor did not personally vouch for the victims, thus, his comments were not improper.  Pursuant to federal case law, it was permissible for the prosecutor to argue that the victims were more credible than Petitioner.  Moreover, the prosecutor did not express his personal opinion that Petitioner was guilty. *See United States v. Orellana*, 341 F. App'x 501, 507 (11th Cir. 2009) (noting a "prosecutor may not express his personal opinion concerning a defendant's guilt" but finding that a prosecutor "may express a personal opinion provided that it is based on evidence in the record.") (citations omitted).  The State argued, based on the testimony at trial, that the jury should find the victims' testimony more credible than Petitioner's testimony.  Petitioner testified that the

victims were lying, thus, it was proper for the State to argue to the jury that the victims were not lying and instead, Petitioner, a seven-time convicted felon, had a greater motivation to fabricate his testimony.

Petitioner has not shown that the prosecutor's statements were improper or that counsel acted deficiently in failing to object.  Moreover, Petitioner has not shown a reasonable probability that, but for the prosecutor's comments, the outcome of the trial would have been different.  The state court's determination of this claim was not objectively unreasonable, nor was it an unreasonable determination of the facts in light of the evidence presented.  Thus, claim six is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

A prisoner seeking to appeal a  district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite

showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Cedric Oliver (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 13th day of July, 2012.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 7/13
Counsel of Record
Cedric Oliver